UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHAUN L. STEELE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) CAUSE NO. 3:18-cv-630 RLM-MGG |
| | ) |
| KATHY GRIFFIN, et. al., | ) |
| | ) |
| Defendants | ) |

<u>OPINION AND ORDER</u>

Shaun Steele believes the Indiana Department of Correction released him 169 days later than it should have. He sues five present and former officials of the Indiana Department of Correction for deliberate indifference to his right to freedom. 42 U.S.C. § 1983; U.S. CONST. AMEND. VIII. The case proceeded to a trial without a jury on July 26, 2021. The court granted Mr. Steele's mid-trial motion to dismiss his claim against Miami Correctional Center Warden Kathy Griffin. The four remaining defendants (then-MCC Assistant Superintendent for Re-Entry Sharon Hawk, Classification Supervisor Amy Clark, Correctional Caseworker Kimberly Smith, and Release Specialist Jennifer Farmer) believe that Mr. Steele was released when he should have been.

Elkhart Superior Court Judge Stephen Bowers sentenced Mr. Steele in October 2010 to a net sentence of eighteen years (modified to sixteen years in 2013) for resisting law enforcement, operating while impaired endangering a person, receiving stolen auto parts, and being a habitual offender. The habitual offender sentence for the auto parts crime ran consecutive to the other two. Mr.

Steele petitioned the sentencing court in 2016 for another 196 days of presence credit[1]; Indiana law entitled him to a corresponding 196 days of good time credit if his petition was granted. The court granted Mr. Steele's petition, but the accompanying order suggested that the judge was working with a mistaken "earliest possible release" date for Mr. Steele (the "EPR" in Indiana's penological jargon). The July 21, 2016 order reads in pertinent part:

> The court awards an additional 196 days credit, plus equal good time credit against the sentence in this case. The Court notes the Defendant's EPR is 7/29/16 and with the award of credit time the Defendant's EPR should be 7/2/16. The court orders the Defendant released this date pending no other holds. Amended abstract [of judgment] entered.

The order reached Department of Correction release specialist Jennifer Farmer, who noted a problem: Mr. Steele's earliest possible release date was actually July 209, 2017, not July 29, 2016.[2] As Ms. Farmer counted things, the 196 days of presence credit and 196 days of good time credit wouldn't reduce Mr. Steele's sentence to the point of entitlement to immediate release. Ms. Farmer emailed Judge Bowers's court reporter to ask for clarification: did Judge Bowers want Mr. Steele's sentence modified so as to provide for an immediate release, or did he want to delete reference to the earliest possible release date

---

[1] Those 196 days reflected time Mr. Steele had served on a separate conviction. When the court of appeals vacated that conviction, Mr. Steele was entitled under Indiana law to credit against his next term of imprisonment.

[2] Exhibit 23, which appears to be in Mr. Steele's handwriting, says that the 7/29/16 date in the order was a typographical error, and that Judge Bowers had recited the correct (2017) date in open court. Nothing that the court has found in this record indicates when Exhibit 23 was prepared, or whether any defendant ever saw it in time to take action on it, so the court gives it no weight.

and let the Department of Correction calculate the new date? Judge Bowers reissued this order on July 26 without reference to any specific earliest possible release dates:

> Court is contact by the Indiana Department of Correction and is advised that the Court has assumed an incorrect earliest possible release date. Record reviewed. Court now amends its Order of July 21, 2106. Such entry should now read: … Court awards an additional 196 days credit, plus equal good time credit against the sentence imposed for this case. IDOC to determine the Defendant's earliest possible release due date and maximum possible release date. The portion of the Order calling for the immediate release of the Defendant is vacated.

The Department of Correction (through Ms. Farmer) recalculated Mr. Steele's earliest possible release date as January 14, 2017. For reasons not pertinent to this case,[3] Mr. Steele wasn't released from the Department of Correction until March 2017. He contends that the modification of his earliest possible release date reflected only one of the 196-day credits that Judge Bowers had ordered, not both.

Mr. Steele has been very diligent in trying to get the credit he thinks was denied him. He filed habeas corpus petitions in the county in which he was imprisoned and brought the issue to the Elkhart Superior Court's attention repeatedly. The most recent Elkhart Superior Court order was issued less than

---

[3] The trial record contains a rich vein of facts that aren't pertinent to the resolution of this case. Some are too remarkable to not mention, at least in passing. For example, Mr. Steele testified in a deposition that part of the reason he wasn't released from prison in January 2017 is a disciplinary finding of escape that cost him 45 days of good time credit. The "escape" occurred when Cass County, Michigan police stopped him on the road and arrested him on ten-year-old warrant for illegal possession of a snapping turtle. The police took Mr. Steele to jail. The Indiana work release center didn't know where Mr. Steele was, so a disciplinary charge of escape was filed.

3

four weeks before this trial. Mr. Steele worked his case up to the Court of Appeals of Indiana, which told him that a motion to correct his sentence had to be denied because it looked beyond the sentencing judgment. (Exhibit 6, Steele v. State, No. 19A-CR-79 (Ind. Ct. App. Jan. 24, 2020)). The defendants report, and Mr. Steele agrees, that none of those efforts was successful.

The court has struggled to draw the pertinent facts from the trial record. The court appreciates that counsel tried to streamline the trial process by submitting thousands of pages of documents in lieu of testimony in a case with little factual dispute, but the result is a mountain of paper without guidance to a judge trying to find his way through. Many papers are in the record more than once; others seem to be there only because they were found in a file. For example, pages 290 and 291 of Exhibit 9 (the defendants' initial disclosures) appear to be two copies of a transportation order directing the Elkhart County Sheriff to produce Mr. Steele in court. Judge Bowers's July 21, 2016 entry shows that Mr. Steele was in court, so the court can only guess why one of the parties thought it important to include the transportation in the record even once, much less twice.[4] The court has tried to work its way through the exhibits, but concedes that it might have missed something important simply because its importance wasn't explained.

The parties disagree about whether Mr. Steele was credited with both the additional jail time credit and the additional good time credit. A simple

---

[4] The ensuing fifty pages or so similarly contain an unexplained number of transportation orders and rescissions of transportation orders. Their significance is, unfortunately, lost on the court.

arithmetical computation suggests that Mr. Steele was credited with one (it doesn't matter which one) but not the other. Ms. Farmer told Judge Bowers's court reporter on July 24, 2016 that Mr. Steele's earliest release date was July 29, 2017 – one year and 5 days (370 days) after Ms. Farmer sent the email. Basic arithmetic suggests that two 196-day credits would reduce a sentence by 392 days, or one year and 27 days – more than Mr. Steele was to serve unless his credit time classification changed (which never happened). Because the 196-day jail time credited reflected days in custody before the sentence was imposed – meaning days that Mr. Steele already had served – any good time credit would have accrued before the sentence was imposed, and so before Judge Bowers entered his July 21 order.

As things played out, Mr. Steele lost good time for disciplinary reasons after his sentence was modified. He lost 60 days of good time credit in October 2016, then he lost another 45 days in January 2017. But if arithmetical computation accurately reflects what should have happened, Mr. Steele should have been released onto supervision well before he lost those 105 days.

Using only those numbers, a fourth grade arithmetic class would conclude that Mr. Steele should have been released from prison during the week of July 21-26, 2016 because he received 392 days' credit against a sentence that had only 370 days to completion. Mr. Steele wasn't released that week.

But nothing in the Constitution requires the calculation of a sentence to be intuitive. The defendants say Mr. Steele received the full 392 days of credit that Judge Bowers ordered. While Mr. Steele (and not the defense) bears the

5

burden of proving that his constitutional right was violated, the court turns to the evidence to try to understand the defendants' reasoning.

Ms. Farmer testified at trial that she entered the new 196 days of presentence credit into the Department of Correction computer offender information system, and the offender information system would then automatically add the good time credit. But without more, that doesn't explain why Judge Bowers's award of 392 days of credit would leave Mr. Steele in prison into 2017. On pages 10-11 of Exhibit 9, Ms. Farmer's interrogatory answers gave this description of how the Department of Correction calculated Mr. Steele's release date to be in March 2017:

> Count 2 RLE F/D sentenced 10-14-2010 to 2 yrs with 100dys JTC (07-26-2019 modified to 296dys JTC)
> - 12-23-2009    EDS (includes 296dys JTC)
> - 12-23-2010    PRD/Discharged from Parole Obligation
>
> COUNT 5 Auto Theft/Hab Off Enhance F/C: sentenced to 16yrs with 4yrs suspended to Probation, consecutive to #2
> - 12-24-2010    EDS (the day after Count 2 was time served)
> - 12-26-2013    loss of 90ECT
> - 07-23-2014    23ECT days restored
> - 01-26-2015    23ECT days restored
> - 10-25-2016    loss of 60ECT while on CTP
> - 01-03-2017    Escape from CTP – time stopped
> - 01-06-2017    Apprehended – time restarted
> - 01-30-2017    Loss of 45ECT due to CTP escape
> - 03-10-2017    Released to Court Supervision/picked up by Michigan on 02-27-2019

(Exhibit 10, pp. 10-11).

That's a little bit too cryptic to be helpful. Cross-referencing to other exhibits for help with acronyms (e.g., Exhibit 10-1), the interrogatory answer seems to say that:

6

- Mr. Steele's jail time credit on count 2 (resisting law enforcement as a Class D felony) was modified from 100 days to 296 days;

- that the additional 196 days' credit modified his effective date of sentence to December 23, 2009; and

- he was discharged from the consecutive two-year sentence on that count on December 23, 2010.

- the effective date of Mr. Steele's sentence on count 5 (auto theft and habitual offender, class C felony), was December 24, 2010 (when he completed the consecutive sentence on count 2);

- he lost 90 days earned credit time on December 26, 2013, but 46 of those days had been restored by January 26, 2015;

- Mr. Steele lost 60 says of earned credit time on January 25, 2016 and another 45 days of earned credit time on January 30, 2017; and

- Mr. Steele was released on March 10, 2017.

If the court understands this exhibit correctly, the exhibit doesn't prove, standing alone, that Mr. Steele received any of the 392 days credit that Judge Bowers ordered on count 5 (the sentence he was serving when he appeared before Judge Bowers). Presumably, the backdating of the effective date of Mr. Steele's sentence on count 2 produced a hypothetical earlier release date on count 2 – remember these changes were made in 2016, long after Mr. Steele had completed his sentence on count 2 – which in turn moved the effective date and projected release date of the Count 5 sentence back to an earlier interval. But nothing in this exhibit depicts that happening.

7

Ms. Farmer testified at trial that she originally had credited the 196 days (with the computer crediting the other 196 days) against count 5 because Mr. Steele was serving the count 5 sentence, but Mr. Steele asked her to credit the days against count 2 instead, so she did. She testified that the modification didn't affect Mr. Steele's release date.

The court asked Ms. Farmer at trial if there was an exhibit that showed how the computer system credited Mr. Steele with both sets of 196 days. Counsel for the defendants told the court he believed Exhibit 26 served that purpose. At the end of the trial, he corrected that to Exhibit 36. The court was left to walk its way through the exhibit in search of that verification, and found that it makes more sense in conjunction with Exhibit 30-5: the Department of Correction's detail credit time calculation for Mr. Steele might illustrate how the computer system provided him with both 196 days of jail time credit and 196 days of good time credit. [Exhibit 30-5]. The email Ms. Farmer sent to Judge Bower's court reporter shows that Mr. Steele's original effective date of sentence was July 8, 2011. When Ms. Farmer gave him 196 days of credit, his effective date changed to December 24, 2010. The detail credit time calculation in Exhibit 30 was created on January 18, 2017 – after Ms. Farmer credited Mr. Steele with 196 days – so it shows December 24, 2010 (when he started the sentence on count 5) as Mr. Steele's effective date of sentence. It appears that Mr. Steele's detail credit time calculation was updated each time he gained or lost earned time based on his behavior, so the next update on his calculation sheet occurred on December 26, 2013. That line credits Mr. Steele for 1,098 days of time served

8

and 1,098 days of credit time (and then subtracts 90 days for unrelated reasons). The difference between December 24, 2010 and December 26, 2013 is 1,098 days. Accordingly, this approach seems to show that Mr. Steele received 196 days jail time credit in the form of a new effective date of sentence, plus statutory good time credit on his actual time served.

That explanation would dove-tail with the summary in Ms. Farmer's interrogatory answer, and seems to be internally consistent. And the explanation might be correct, both factually and mathematically. But it doesn't explain why Mr. Steele would have remained in prison after Judge Bowers awarded a 13-month credit when Mr. Steele had 12 months left to serve.[5] None of these exhibits was designed with the purpose of helping a judge understand the accounting method the Department of Correction uses for credit against a criminal sentence. The court simply doesn't have the confidence in its understanding of these exhibits to give them more weight than the simple arithmetic calculation that started the discussion.

It's more likely not that Mr. Steele remained in prison 196 days longer than he should have. He was kept in prison longer than he should have been because of Ms. Farmer's reliance on the Department of Correction offender information system.

---

[5] The arithmetical model depends on the accuracy of Officer Farmer's statement to the court reporter in the Elkhart Superior Court that Mr. Steele's pre-credit projected release date was July 29, 2017. The court has identified nothing in the record that suggests that date was mistaken.

9

This isn't a claim for negligence; Mr. Steele brings his claim under the United States Constitution. "Incarceration beyond the date when a person is entitled to be released violates the Eighth Amendment if it is the product of deliberate indifference." Figgs v. Dawson, 829 F.3d 895, 902-903 (7th Cir. 2016) (*citing* Burke v. Johnston, 452 F.3d 665, 669 (7th Cir. 2006); Campbell v. Peters, 256 F.3d 695, 700 (7th Cir. 2001)). A prison official is deliberately indifferent in this context if (1) she knew of the prisoner's problem and the risk that unwarranted punishment was being inflicted; (2) she "failed to act or took only ineffectual action under the circumstances;" and (3) there is a causal connection between the official's response and the prisoner's unjustified detention. Burke v. Johnston, 452 F.3d 665, 669 (7th Cir. 2006). Simple error, negligence, or even gross negligence is not enough to establish deliberate indifference – the defendant must be "essentially criminally reckless, that is, ignore[] a known risk." Figgs v. Dawson, 829 F.3d at 903; Wells v. Caudill, 967 F.3d 598, 601 (7th Cir. 2020).

No defendant other than Ms. Farmer can be liable to Mr. Steele under § 1983 because they weren't deliberately indifferent to his plight. Mr. Steele sent requests for help to each of them, but each responded as she should have in light of her job duties: each forwarded the request to the release specialist (later the director of sentence computations and release) in charge of resolving such things. None of those defendants ignored or turned a blind eye to Mr. Steele's pleas. Liability under § 1983 must be based on personal responsibility for a constitutional violation, Matthews v. City of E. St. Louis, 675 F.3d 703, 708 (7th

Cir. 2012), and the defendants other than Ms. Farmer bear no such personal responsibility. Figgs v. Dawson, 829 F.3d at 903-904 (finding no deliberate indifference where the defendant referred the plaintiff's grievance about his release date to the record office supervisor). They are entitled to judgment in their favor.

Ms. Farmer can't be held liable to Mr. Steele under § 1983 simply because her computer-generated calculation caused Mr. Steele to remain in prison longer than he should have. Being in prison after one's sentence expired is a terrible thing that should be wished on no one; freedom is especially dear when a sentence of years expires. But again, Mr. Steele sues under the Constitution, and innocent mistakes generally don't violate the Constitution. To be liable, Ms. Farmer must have been deliberately indifferent to whether Mr. Steele was being held illegally.

Ms. Farmer doesn't, and really couldn't on this record, claim to have been unaware that Mr. Steele thought he was being kept too long. Mr. Steele appears to have peppered her with complaints, either directly or through others, and it's understandable that he would do so. But Ms. Farmer had reasonable grounds to believe that Mr. Steele's complaints were unfounded. Ms. Farmer had been trained to input credit for days actually served and leave it to the computer program to account for earned good time credit. The court has already held that as far as this record shows, it's more likely than not that the computer program didn't account for Mr. Steele's other 196 days, but this record doesn't tell the court why that happened. Nothing in Ms. Farmer's words or conduct lead the

11

court to conclude that Ms. Farmer did anything with a mindset of recklessness or disregard as to whether Mr. Steele's imprisonment after July 2016 was legal. This record doesn't allow the court to find that Ms. Farmer was deliberately indifferent to Mr. Steele's constitutional rights.

Finally, the court has to at least acknowledge the possibility that this case is moot. Page 191 of Exhibit 8 is an order by Judge Bowers dated August 10, 2018, reflecting the revocation of Mr. Steele's term of post-incarceration probation in the criminal sentence we have been discussing. In pertinent part, the order reads:

> The Defendant admits the violation. Factual basis entered. The Court finds the Defendant violated. … The Court revokes the Defendant's Probation and orders the Defendant to serve the balance of the sentence through the IDOC. Upon successful completion of the clinically appropriate substance abuse treatment prom as determined by the IDOC, the Court will consider modification of this sentence. … The Defendant is granted 106 days credit plus statutory credit time. *The Court further awards the Defendant an additional 196 days credit that was not previously awarded to him. …*

(Emphasis added). On September 26, 2019, Judge Bowers entered an order in response to Mr. Steele's motion for clarification, explaining, among other things, "The Court further confirms the 196 days is credit time that was not previously awarded to the Defendant." (Exhibit 8, p. 192). The exhibit contains a flurry of forms that might relate to the August and September entries, but without assistance from someone familiar with the forms, the court can't tell how long the August 2018 revocation sentence ("the balance of the sentence") was, when Mr. Steele was released from custody on the revocation sentence, or whether he

12

was released on that sentence 196 days earlier than he would have been otherwise.

If Mr. Steele eventually was released from custody on this sentence 196 days earlier than he otherwise would have been, whether that occurred before or after his revocation, Mr. Steele must lose his case because he received what he says was kept from him. Given the lack of discussion of this possibility, the court assumes things didn't play out that way. But the possibility looms large enough from these pages in the exhibit that the possibility had to be acknowledged. The court will decide the case on the issue the parties presented: Mr. Steele's Eighth Amendment claim that he was over-imprisoned.

Defendant Griffin had no involvement in Mr. Steele having been imprisoned for too long, so the claim against her was dismissed at trial on Mr. Steele's motion. Defendants Hawk, Clark, and Smith had no personal involvement in Mr. Steele having been imprisoned for too long. Defendant Farmer wasn't deliberately indifferent to Mr. Steele having been held too long. For these reasons, the court finds for all defendants and against Mr. Steele, and directs that judgment be entered for the defendants.

SO ORDERED.

ENTERED:     August 2, 2021

　　　　　　　　　　　　　　　　　　/s/   Robert L. Miller, Jr.
　　　　　　　　　　　　　　　　　Judge, United States District Court

13